UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x
DARRYL GODFREY,                           :
                                          :
                         Plaintiff,     :  **MEMORANDUM AND ORDER**
                                          :
      -against-                      :  02-CV-2101
                                          :
NEW YORK CITY TRANSIT AUTHORITY,          :
                                          :
                        Defendant.     :
                                          :
------------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

Plaintiff Darryl Godfrey brings this action against the New York City Transit Authority ("TA") pursuant to the Americans with Disabilities Act ("ADA"), 32 U.S.C. § 12112 *et seq.*; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; and the New York State Executive Law § 296 ("New York State Human Rights Law") alleging that he was discriminated against when his application for a position as a revenue collecting agent was put on medical hold for twelve weeks due to a hearing impairment which is correctable by a hearing aid. Presently before this court is defendant's motion for summary judgment. For the reasons set forth below, defendant's motion for summary judgment is granted.

**Background**

Plaintiff applied for the position of revenue collecting agent with the TA in the year 2000. (Levy Decl. Ex. C 27–31.) A revenue collecting agent is an armed security guard whose duties include collection and transportation of revenue and revenue related items, driving armored cars engaged in the transportation of such revenue, and providing security for TA workers engaged in the repair of Metro-Card vending machines. (Levy Decl. Ex. C 12–13.)

Plaintiff was interviewed by Henry D'Amato who found plaintiff qualified to proceed through the other phases of the application process. (Levy Decl. Ex. C 28–30.) At the time of the interview, Mr. D'Amato was aware that the plaintiff wore a hearing aid. (Levy Decl. Ex. C 34–35; Ex. D 63.)

Plaintiff claims that the hearing aid corrects his hearing impairment to the extent that he can perform all the essential functions of revenue collecting agent. (Levy Decl. Ex. D 125–126.) Plaintiff has stated that he has worked as a security guard, armed courier, air courier, and driver and, since the filing of this motion, has been employed as a security guard for the Port Authority. (Levy Decl. Ex. d 21–30.) Plaintiff asserts that wearing a hearing aid has never interfered with his ability to do any of these jobs. (Levy Decl. Ex. D at 125.)

After D'Amato interviewed plaintiff, TA supervisor Valerie Blakes helped plaintiff apply for a New York City pistol license. (Levy Decl. Ex. C. 30; 34–35; Ex. D 65.) After two months had elapsed without word from the TA, plaintiff contacted Ms. Blakes who informed him that there was a problem with his pistol application. (Levy Decl. Ex. D 67.) Apparently, the plaintiff, in his attachments to his application, alluded to being terminated from a prior job based upon an accusation that he had engaged in employee theft. (Levy Decl. Ex. D 67–71.) Both Mr. D'Amato and Ms. Blakes met with the plaintiff for a second interview and asked him to submit a letter explaining the circumstances of his previous termination. (Levy Decl. Ex. D 71–76.)

Approximately one month after plaintiff received his pistol license, he received a letter from the TA instructing him to appear at the TA medical department to provide a urine sample for a drug screening. (Levy Decl. Ex. D 79–82.) After plaintiff passed the drug test, the TA instructed him to return to the medical department to complete his medical examination. (Levy Decl. Ex. D 83.) Plaintiff appeared for this examination and was given a variety of tests which

included a hearing exam. (Levy Decl. Ex. D 83–85.) Since the TA does not have the equipment to perform a hearing test for an individual wearing a hearing aid, the TA informed the plaintiff that he needed to have his own audiologist conduct the hearing test (Levy Decl. Ex. I 23–34; M; D 86–89; 95–96). On March 1, 2001, the plaintiff was placed on medical hold until the results of his aided hearing test could be evaluated to determine whether he met the medical standards for a revenue collecting agent. (Levy Decl. Ex. D 83; 89.)

At the time plaintiff was applying for the revenue collecting agent position, the TA was in the process of developing a job profile detailing the physical requirements needed for the position. (Levy Decl. Ex. I 14–15.) On March 5, 2001, plaintiff brought the results of his aided hearing test to the TA medical center. (Levy Decl. Ex. D 101.) However, despite the results of the aided hearing test, the plaintiff was kept on medical hold while the TA Medical Department determined whether it needed to conduct a practical field test (done in an actual work setting) to determine whether the plaintiff's hearing impairment would create a danger to him or the public or affect his ability to perform the duties of a revenue collecting agent. (Levy Decl. Ex. I 27–28; Clarke-Belgrave Aff. 4–5.) On May 24, 2001, after being on medical hold for approximately twelve weeks, the TA concluded that the job profile for a revenue collecting agent was not likely to be approved soon and therefore deemed the plaintiff medically qualified on May 24, 2001. (Ex. G.)

Although plaintiff was deemed medically qualified, he was required to take a second drug test because the first test was no longer valid—thirty days had passed since it was conducted. (Levy Decl. Ex. I 54.) The TA left the plaintiff several telephone messages in late May and early June notifying him that he needed to report to the TA medical center for a second drug test. (Levy Decl. Ex. D 115–117; Ex. F.) The TA also sent plaintiff a letter on June 12,

2001 requesting that he report to the TA medical center on June 25, 2001. (Levy Decl. Ex. H; Ex. D 118–120.) The plaintiff failed to respond. In early September, plaintiff was again contacted by the TA and was asked to report to take another drug test. (Levy Decl. Ex. D 121–124.) However, despite the efforts of the TA to conduct a second urine test, the plaintiff failed to show up and did not try to contract the TA. (Levy Decl. Ex. D 117–123.) At no time was the plaintiff ever told that he was medically unfit for a position with the TA. (Levy Decl. Ex. D 125.)

On June 18, 2001, plaintiff filed a charge with the New York State Division of Human Rights ("SDHR") alleging that the TA discriminated against him based on his hearing disability (Levy Decl. Ex. B.) On May 15, 2002, the case was dismissed by the SDHR, at the plaintiff's request, for administrative convenience. (Levy Decl. Ex. E.) On October 24, 2002, the United States Equal Employment Opportunity Commission issued plaintiff a right to sue letter. (Levy Decl. ¶ 21.) On April 8, 2003, the plaintiff filed this action under the ADA, Title VII, and the New York States Human Rights Law alleging disability discrimination. (Levy Decl. Ex. A.)

**Discussion**

Summary Judgment is appropriate "where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). The court must view all facts in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–159, 90 S. Ct. 1598, 26 L. Ed 2d 142 (1970)). "The mere existence of *some* alleged factual dispute between the

parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–248.

Although Defendant's summary judgment motion is unopposed and the facts stated in the Defendant's Local Rule 56.1 statements are deemed admitted for the purpose of this motion, the moving party must still meet its burden of demonstrating that no material issue of fact exists. *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 1998) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)). Additionally, each of the facts in Defendant's 56.1 statement must also be followed by citation to evidence which would be admissible, as required by Fed. R. Civ. P. 56 (e). *See also*, E.D.N.Y. Local Civ. R. 56.1 (d). "Thus, it is clear that even when a non-moving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 1998). "Moreover, in determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statements of undisputed facts contained in the moving party's Rule 56.1 statement." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241 (2d Cir. 2004). If the evidence in support of the summary judgment motion does not meet this burden, summary judgment must be denied "*even if no opposing evidentiary matter is presented.*" *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 1998) (emphasis in original).

**I. Disability Discrimination Claim**

The ADA prohibits discrimination against qualified individuals with a disability. *Sutton v. United Air Lines*, 527 U.S. 471, 476, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999). A plaintiff who alleges employment discrimination under the ADA bears the initial burden of showing a

prima facie case. *See Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 869 (2d Cir. 1998); *Wernick v. Federal Reserve Bank of N.Y.*, 91 F.3d 379, 383 (2d Cir. 1996). To establish a prima facie case of discrimination under the ADA a plaintiff must show: (1) the employer is subject to the ADA (2) he is an individual with a disability within the meaning of the ADA; (3) he is otherwise qualified to perform the essential functions of the job; and (4) he suffered an adverse employment action because of the disability. *See Ryan*, 135 F.3d at 869–870; *Wernick*, 91 F.3d 379 at 383; *Miller v. Taco Bell Corp.*, 204 F.Supp.2d 456, 458 (E.D.N.Y 2002). Defendant argues that it is entitled to summary judgment because plaintiff is not disabled under the ADA and has not suffered an adverse employment action.

**A. Disability under the ADA**

The ADA defines "disability" as either: (A) a physical or mental impairment that substantially limits one or more of an individual's major life activities; (B) a record of such impairment; or (C) being regarded as having such impairment. 42 U.S.C. § 12102(2); *Sutton*, 527 U.S. at 478.

**1. Impairments that Substantially Limit Major Life Activities**

In the present case, the plaintiff's impairment did not substantially limit a major life activity. When determining whether a plaintiff suffers a disability under the first subsection of the ADA's definition, the court must use a three step approach. *See Bragdon v. Abbot*, U.S. 624, 118 S. Ct. 2196, 141 L. Ed. 2d 540 (1998); *Colwell v. Suffolk County Police Department*, 158 F.3d 635, 641 (2d Cir.1998). The court must first determine whether the plaintiff suffers from an impairment. *Id*. Second, the court must ascertain whether the life activity identified by the plaintiff constitutes a "major life activity". *Id*. Third, the court must determine whether the plaintiff's impairment "substantially limits" the major life activity he has identified. *Id*.

In the present case the plaintiff's hearing condition is a physical impairment. Under the ADA, "impairment" includes any physiological disorder or condition that affects the body systems, including the special sense organs. 29 C.F.R. § 1630.2(h)(1); *see Taco Bell*, 204 F.Supp. 2d at 459. The plaintiff's hearing deficiency is a physiological disorder which affects a special sense organ (the ear) and is therefore considered an "impairment" under the ADA.

It is also apparent that hearing is considered a "major life activity" under the ADA. The EEOC regulations define "major life activity" to include functions such as caring for oneself, performing manual tasks, seeing, *hearing*, speaking, breathing, learning, and working. 29 C.F.R. § 1630.2(i); *see Sutton*, 527 U.S. at 480 (emphasis added).

Whether a plaintiff's impairment "substantially limits" a major life activity is a fact-specific inquiry. *Colwell*, 158 F.3d at 643. The term "substantially limits" means either that a person is unable to perform a major life activity that the average person in the general population can perform or that a person is significantly restricted as to the condition, manner, or duration under which the activity may be performed when compared with the condition, manner or duration under which the average person in the general population can perform the same life activity. 29 C.F.R. § 1630.2(j)(1). Some factors that courts consider when determining whether a limitation is substantial are the nature and severity of the impairment, the duration or expected duration of the impairment, and the permanent or long term impact resulting from the impairment. 29 C.F.R. § 1630(j)(2); *See also Ryan*, 135 F.3d at 870-72 (applying the three factors). When determining whether an individual is disabled under the ADA, the court must consider his condition as he functions with the use of corrective and mitigating measures. *See Sutton*, 527 U.S. at 475 (holding that when determining whether vision impairment is a deficit the determination should be made with reference to eyeglasses and contact lenses); *Taco Bell*,

204 F.Supp.2d at 463 (holding that the court must consider plaintiff's condition as she functions with the use of lip reading and her hearing aid). In *Taco Bell*, the court held that there was a triable issue of fact as to the issue of substantial limitation when the plaintiff's treating physician offered evidence that the plaintiff could not hear complete words or sentences even with the help of her hearing aids and lip reading. 204 F.Supp. 2d at 463.

In the present case, the plaintiff's hearing impairment does not substantially limit his ability to hear since his impairment is corrected with a hearing aid. This case is distinguishable from *Taco Bell* because the plaintiff does not present any medical evidence that his ability to hear is substantially limited with his use of a hearing aid. Plaintiff has actually represented that by using a hearing aid his life is not substantially limited. Plaintiff states that his hearing impairment has never interfered with his ability to perform the job functions required by his various security jobs (Levy Decl. Ex. D 125–126). Indeed, plaintiff currently works as a security guard for the Port Authority where his responsibilities include reporting suspicious activity and listening to the police radio. (Levy Decl. Ex. D 22–23). Not only is the plaintiff able to work as a security guard but in 2003 and 2004 he was able to work extensive amounts of overtime in that capacity. (Levy Decl. Ex. D 26–27). In addition to his job with the Port Authority, the plaintiff also works a second part time job every other weekend for a private security service. (Levy Decl. Ex. D 25–30). As an armed guard, plaintiff also described his previous job responsibilities as including the ability to maintain communication with eyes and ears in order to prevent an ambush (Levy Decl. Ex. D 35–36). Therefore, there is no triable issue of fact as the whether the defendant's hearing impairment substantially limits the major life activity of hearing. It simply does not.

### 2. Record of Impairment

Plaintiff may have a claim if he can show that an employer relied upon plaintiff's past record of an impairment to discriminate against him. *See* 42 U.S.C. § 12102(2)(B); *Colwell*, 158 F.3d at 645. This standard is satisfied if a past record indicates that the plaintiff has or had an impairment that would substantially limit one or more major life activities. *Id*. In this case, plaintiff fails to present any evidence that the TA relied on a past record of plaintiff's disability when it placed him on medical hold. The basis of the TA's medical hold was the result of a hearing test administered by the TA and an aided hearing test administered by the plaintiff's own doctor. (Levy Decl. Ex. D 83–85; 89; 95–96.) Therefore, plaintiff has failed to show that the TA relied on a past record of disability establishing an actionable discrimination claim under the ADA.

### 3. Regarded As Impaired

An employer's perception of whether a plaintiff is disabled can also establish a viable disability claim under the ADA. *Colwell*, 158 F.3d at 646. The employer must have regarded the plaintiff as disabled, that is, as having had an impairment that substantially limits a major life activity. *Id.* In this context the ADA applies in two situations: (1) when an employer mistakenly believes that a person has a physical impairment that substantially limits a major life activity, or (2) when an employer mistakenly believes that an actual non-limiting impairment substantially limits a major life activity. *Sutton*, 527 U.S. at 489. In other words it is not enough for the employer to believe that a plaintiff is impaired. An employer must also believe that the plaintiff has an impairment that substantially limits a major life activity.

Although working is considered a major life activity, a plaintiff must show that he was perceived to be incapable of working in a "broad range of jobs" in order to prove that he was

"substantially limited" in this major life activity. *Sutton*, 527 U.S. at 491; *Murphy v. United Parcel Service*, 527 U.S. 516, 523, 119 S. Ct. 2133, 144 L. Ed. 2d 484 (1999); *Colwell*, 158 F.3d at 647; *Ryan*, 135 F.3d at 872. Thus to be regarded as substantially limited in the major life activity of working, a plaintiff must be regarded as unable to perform more than one particular job. *Sutton*, 527 U.S. at 492; *Murphy*, 527 U.S. at 523. If other employment opportunities utilizing an individual's skills are available, the individual is not precluded from a broad range of jobs and therefore is not regarded as having an impairment that substantially limits a major life activity. *Sutton*, 527 U.S. at 492.

Although the plaintiff was put on medical hold, this does not create a genuine issue of material fact as to whether he is regarded as disabled. The TA never medically disqualified the plaintiff from the position of revenue collecting agent. (Levy Decl. Ex. D 125.) The plaintiff was merely put on medical hold while the TA determined whether it was necessary to give him a practical field test, as it does for other TA positions that are sought by people with hearing impairments. (Levy Decl. Ex. I 27–29; 43.) In the end, plaintiff was not required to take a practical field test and he was deemed medically qualified for the position of revenue collection agent. (Levy Decl. Ex. G.) Plaintiff was never offered the revenue collecting agent position only because he never took his final drug test despite repeated requests from the TA that he do so. (Levy Decl. Ex. D 121–124.) The TA's release of the medical hold on plaintiff's application indicates that the TA did not regard him as substantially limited in his ability to work as a revenue collecting agent.

### B. Adverse Employment Action

Assuming arguendo that the plaintiff is disabled under the ADA, his claim would still fail because he did not suffer an adverse employment action. Since the ADA is part of the same

broad framework as other anti-discrimination acts, such as the ADEA and Title VII, it is subject to the same analysis. *Picinich v. United Parcel Service*, 2005 U.S. Dist. LEXIS 38212, at *81 n.6 (N.D.N.Y. Dec. 23, 2005) (citing *Miller v. Public Storage Management, Inc.*, 121 F.3d 215, 218 (5th Cir. 1997)).

A plaintiff suffers an adverse employment action when there is a materially adverse change in the terms and conditions of employment. *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002). The Second Circuit has defined an adverse employment action broadly to include "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand." *See Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001) (quoting *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999)). However, not every unpleasant incident is an adverse employment action. *Ongsiako v. City of New York*, 199 F.Supp 2d 180, 186 (S.D.N.Y. 2002) (internal quotations and citations omitted). A minor stumbling block toward securing future employment is not an adverse employment action. *See Wanamaker v. Columbian Rope Company*, 108 F.3d 462, 466 (2d Cir. 1997) (finding that barring a terminated employee from using an office and phone to conduct a job search is a mere stumbling block). Courts have also held that a mere delay in the terms or conditions of employment is insufficient to establish an adverse employment action. *See Galabya v. New York City Board of Education*, 202 F.3d 636, 640 (2d Cir. 2000) (delay in reassignment does not constitute an adverse employment action); *see also Davis v. City University of New York*, 1996 U.S. Dist. LEXIS 6345 (S.D.N.Y. 1996) (defendant's delay in granting plaintiff tenure was insufficient to establish an adverse employment action when the plaintiff eventually received the promotion).

In *Rivera v. The City of New York*, 392 F.Supp. 2d 644, 654 (S.D.N.Y. 2005), the court stated that there was no adverse employment action when the New York City Police Department

11

found a plaintiff psychologically disqualified for police work but later reinstated him as an eligible police officer candidate three years later. The present case is analogous to *Rivera* because, in both cases, the plaintiff was temporarily denied a job but was eventually found to be qualified. However, the present claim is weaker than that in *Rivera* because here the plaintiff was never actually medically disqualified and was only placed on medical hold for twelve weeks. (Levy Decl. Ex. D 125.) At worst, the twelve-week medical hold was a minor stumbling block and not an adverse employment action on plaintiff's way toward obtaining a position as a TA revenue collecting agent. Moreover, the only obstacle preventing plaintiff from obtaining the position was the administration of a drug urine test, which plaintiff did not take despite the TA's repeated requests that he do so.

## II. Improper Medical Examination Claim

The plaintiff also claims that the TA's requirement of a medical examination violates the ADA which prohibits a covered entity from requiring a medical examination and making inquiries regarding the nature or severity of an employee's disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity. 42 U.S.C. § 12112 (d)(4)(A).

In proving business necessity, an employer cannot show simply that an inquiry is beneficial to its business, but rather must demonstrate that the alleged "business necessity" is vital to the business. *Conroy*, 333 F.3d at 97. The Second Circuit noted in *Conroy* that the "employer must also show that the examination or inquiry genuinely serves the asserted business necessity and that the request is no broader or more intrusive than necessary. The employer does not need to show that the examination or inquiry is the only way of achieving a business

necessity, but the examination or inquiry must be a reasonably effective method of achieving the employer's goal." *Id* at 98.

In *Shannon v. New York City Transit Authority*, 332 F.3d 95, 101 (2d Cir. 2003), the court held that when determining whether the requirement of a medical examination violates the ADA "[c]ourts must consider an employer's description of a job's essential functions, including pertinent medical standards." The *Shannon* court found that in the context of driving a bus the ability to differentiate between colors may be deemed essential because a bus driver is responsible for the safety of all of his passengers. 332 F.3d at 103. *Shannon* held that employment decisions may be made in the public interest and that the physical qualifications of the transit authority in that case serve that interest. 332 F.3d at 103.

In the present case the TA's medical examination is job-related and is consistent with business necessity. A revenue collection agent carries a firearm and is charged with protecting TA revenue and personnel. (Levy Decl. Ex. C 12–13.) Therefore, a lot of a revenue agent's time is spent in and around subway stations that are frequently crowded with many passengers and can often be extremely noisy, making it very difficult to hear. This case is similar to *Shannon* because a revenue collection agent with a hearing impairment may be a danger to the public. (Levy Decl. Ex. I 28.) Therefore, it was reasonable for the TA to consider hearing as an essential function of a collecting agent because this would advance its interests in securing the safety of its passengers. (Levy Decl. Ex. I 28.) Plaintiff proffered no evidence to show that the hearing test is more intrusive than necessary. Therefore the TA's requirement of a medical examination does not violate the ADA.

### III. Title VII Disability Claim

Title VII makes it unlawful to refuse to hire an individual because of his race, color, religion, sex or national origin. 42 U.S.C. § 2000e-2(a)(1). However, Title VII does not prohibit discrimination based upon disability. *See Julian v. New York City Transit Authority*, 857 F.Supp. 242, 250 (E.D.N.Y. 1994); *Prince v. Westchester County Department of Health*, 1992 U.S. Dist. LEXIS 7717 at *10 (S.D.N.Y. May 27, 1992). Therefore, the court dismisses the plaintiff's disability discrimination claim under Title VII.

### IV. State-Law Claim

Under New York law, "disability" is defined more broadly than under federal law. For example, under New York law a plaintiff need not show that his disability "substantially limits a major life activity." *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001). The Second Circuit has held that "'disability' as defined by New York state and municipal law is a question best left to the courts of the State of New York." *Id*. In light of the dismissal of all of the plaintiff's claims under federal law, the court declines to exercise supplemental jurisdiction over his New York state law claims. *Id*. at 754-55. Accordingly, the court dismisses plaintiff's state law claim without prejudice to pursuing that claim in state court.

### Conclusion

For the reasons set forth above, the court grants defendant's motion for summary judgment on plaintiff's ADA and Title VII claims. The court dismisses the remaining state law claim without prejudice.

DATED:      Brooklyn, New York
                August 25, 2006

                                              /s/
                                      DORA L. IRIZARRY
                                  United States District Judge